IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY L. CAREY, #152763,      )
                                )
            Petitioner,          )
                                )
      v.                        )        CASE NO. 2:10-CV-772-MEF
                                )
WARDEN ROBERT DANFORD, et al.,  )
                                )
            Respondents.         )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION AND PROCEDURAL HISTORY

This cause of action is before the court on a 28 U.S.C. § 2254 petition for habeas

corpus relief filed by Anthony L. Carey ["Carey"], a state inmate, on August 22, 2010.  In

this petition, as amended, Carey challenges the constitutionality of the decision to deny him

parole issued by the Alabama Board of Pardons and Paroles on March 28, 2007.

*Amendment to Petition - Doc. No. 58.*  Specifically, Carey alleges that during the 2007

parole consideration process members of the parole board, elected state officials and a

victim's right advocate conspired to deny him parole and further complains that parole

board members denied him equal protection, acted in violation of the Ex Post Facto Clause

and deprived him of due process in the application of parole guidelines.  *Clarification of*

*Claims - Doc. No. 61* at 1.

Pursuant to the orders of this court, the respondents filed an answer, supplemental

answers and supporting evidentiary materials wherein they argue that the claims on which Carey seeks to proceed provide no basis for federal habeas relief as they "are barred under the doctrine of *res judicata*...." in light of this court's previous decision in *Carey v. Wynn, et al.*, Case No. 07-CV-1106-MHT-TFM (M.D. Ala. February 24, 2011), appeal denied (11th Cir. June 10, 2011). *Respondents' February 23, 2011 Supplemental Answer - Doc. No. 32* at 1. After submission of all necessary answers, the court allowed Carey an opportunity to respond to each of the arguments set forth by the respondents, including their res judicata defense. *Order of August 24, 2011 - Doc. No. 55*.

Upon review of the pleadings filed by the parties and applicable federal law, the court determines that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the present habeas petition is due to be denied in accordance with the doctrine of res judicata.

## II. DISCUSSION

### A. Prior Judgment on Claims for Relief

Carey asserts that he is entitled to federal habeas relief from the decision to deny him parole issued by members of the Alabama Board of Pardons and Paroles on March 28, 2007. In support of this assertion, Carey maintains that this decision resulted from a conspiracy, denied him equal protection, constituted an ex post facto violation and deprived him of due process. This court decided each of these claims adversely to Carey in a prior

2

civil rights action. *Carey v. Wynn, et al., supra - Recommendation of the Magistrate Judge -- Doc. No. 104*, adopted as opinion of the court and judgment issued February 24, 2011 (Doc. No. 108 and Doc. No. 109). Carey filed an appeal of this decision and the Eleventh Circuit Court affirmed the judgment of this court on June 10, 2011. *Id. - Doc. No. 116*. The portion of this court's opinion in *Carey v. Wynn, et al., supra*, relevant to the issues pending herein reads as follows:

## III.  FACTS

In February of 1989, the Circuit Court of Jefferson County, Alabama (Bessemer Division) sentenced Carey to thirty years imprisonment on a murder conviction. *Plaintiff's Exhibit A to the Response in Opposition - Court Doc. No. 63-3* at 1. At the time Carey filed the instant complaint, he had been considered for parole on four occasions during his incarceration but denied parole after each parole consideration hearing. The relevant decision to deny Carey parole occurred on March 28, 2007. The record demonstrates that the denial of parole occurred because Carey failed to persuade members of the parole board that he is an acceptable risk for release on parole. *Parole Defendants' Exhibits to the March 19, 2008 Special Report - Court Doc. No. 25-2* at 2-5.

## IV.  DISCUSSION

Carey asserts [Bob Riley, Governor of the State of Alabama at the time of the actions about which Carey complains, Troy King, the former Attorney General for the State of Alabama, Miriam Shehane, a member of Victims of Crimes Against Leniency, and Bill Wynn, Velinda Weatherly and Robert Longshore, members of the Alabama Board of Pardons and Parole] violated his constitutional rights when they denied him parole and failed to conduct the 2007 parole consideration hearing within three (3) years of the most recent prior parole consideration. Specifically, Carey complains the defendants (i) denied him due process, (ii) deprived him of equal protection, (iii) subjected him to cruel and unusual punishment, (iv) relied on false information, (v) circumvented the Ex Post Facto Clause, and (vi) conspired to effectuate the denial of parole. *Plaintiff's Complaint - Court Doc. No. 1* at 2-3. Under applicable federal law, these claims entitle Carey to no relief

from this court.

### A.  Due Process - The 2007 Hearing and Denial of Parole

Carey asserts defendants Wynn, Weatherly and  Longshore deprived him of "fair consideration" for parole in violation of his due process rights as the decision to deny parole arose from arbitrary and capricious actions. *Plaintiff's Complaint - Court Doc. No. 1* at 3.  In support of this assertion, Carey complains [that] the parole defendants denied him due process when they (i) failed to act in accordance with laws and regulations applicable to determining an inmate's suitability for release on parole, setting of parole consideration dates and scheduling of parole hearings, (ii) set-off his parole consideration date based on a regulation enacted after entry of his conviction, (iii) considered adverse information provided by the victim's family without verifying the information, (iv) did not allow him to attend the [parole] hearing, (v) denied his family the opportunity to explain the facts surrounding the murder, and (vi) utilized statutes and regulations enacted after his date of conviction in the parole consideration process[.]  Carey's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It does not contain any language that mandates parole....  When the statute is framed in discretionary terms there is not a liberty interest created....  Alabama parole statutes do not create a liberty interest [in parole]...." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms. [Section 15-22-26 of the Alabama Code governs the authority of the parole board to grant parole and provides that "[n]o prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society...."].  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process....'  ...  [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for

4

Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Despite conceding no protected liberty interest in parole, Carey contends that the parole board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration. Carey alleges that this provision creates a protectable expectancy in parole consideration at the requisite set-off time and, therefore, the consideration process must comport with due process. This claim is foreclosed by *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 941-942 (11th Cir. 1982), in which the Eleventh Circuit deemed such a "unique theory ... without merit." 678 F.2d at 942. The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration. Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...." If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards. Petitioner's unique theory is without merit. Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown

5

through an allegation that the Florida Parole and Probation
Commission improperly calculated a prisoner's "presumptive
parole release date."   Accordingly, in the instant case
petitioner['s] ... allegation that the ... parole board has not
accorded him adequate parole consideration does not entitle
him to [relief].

*Slocum*, 678 F.2d at 942.

Carey does not possess a liberty interest in being granted parole that
is protected by the Due Process Clause of the Constitution.   *Heard v.
Georgia State Board of Pardons and Paroles*, 222 Fed. Appx. 838, 840 (11th
Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*,
824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.   Absent the existence of
a constitutionally protected liberty interest in parole, "the procedures
followed in making the parole determination are not required to comport with
the standards of fundamental fairness."   *O'Kelley v. Snow*, 53 F.3d 319, 321
(11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32
(5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty
interest in obtaining parole" Texas inmate could not "complain of the
constitutionality of procedural devices attendant to parole decisions.").
Thus, the procedural due process protections of the Fourteenth Amendment
do not apply to either the parole decision making process, *Thomas*, 691 F.2d
at 488-489, or the parole consideration process.   *Slocum*, 678 F.2d at 942
(failure to provide parole review within time required under parole rules or
properly calculate presumptive date of release on parole does not constitute
a violation of due process).

Moreover, to the extent the complaint can be construed to challenge
the constitutionality of setting and/or delaying a parole consideration hearing
past the time mandated by governing administrative regulations, such action
likewise does not run afoul of the Constitution.   Federal courts no longer
ascertain whether a state created a constitutionally protected liberty interest
by parsing language of statutes and regulations to determine if the language
was "of an unmistakably mandatory character" placing "substantive
limitations on official discretion" but must instead look to the nature of the
deprivation to determine if a state created a liberty interest.   *Sandin v.
Conner*, 515 U.S. 472, 483-484 (1995).   As previously noted, an Alabama
inmate has no liberty interest in parole protected by the Due Process Clause.
Although "States may under certain circumstances create liberty interests
which are protected by the Due Process Clause[,]... these interests will be

6

generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. The parole defendants maintain they acted in accordance with state law and applicable administrative regulations when scheduling Carey's 2007 parole consideration hearing and denied parole to Carey because they were not persuaded he presented an acceptable risk for release on parole. The decisions of the parole board members with respect to Carey demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Carey has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its board members. Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Carey's due process claims.

## B. Equal Protection

Carey, an African American inmate convicted of murder, asserts the defendants violated his right to equal protection by denyig him parole when other inmates convicted of murder and/or more serious crimes have been granted parole. *Plaintiff's Complaint - Court Doc. No. 1* at 3; *Plaintiff's Response in Opposition - Court Doc. No. 63* at 6-7. He further contends that "white inmates are more likely to make parole" than are black inmates. *Plaintiff's Response in Opposition - Court Doc. No. 45* at 5.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion,

national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11ᵗʰ Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11ᵗʰ Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11ᵗʰ Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11ᵗʰ Cir. 1988). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Carey bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment). Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

The defendants adamantly deny they undertook any action in Carey's parole consideration process based on race or any other constitutionally impermissible reason. *Parole Defendants' Exhibits to the March 19, 2008*

*Special Report - Court Doc. No. 25-2* at 2-5.  In addition, the defendants maintain that the denial of parole was based solely on their determination that Carey was not suitable for release on parole.  *Id*.  Carey has utterly and completely failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. Other than Carey's self-serving, conclusory allegation that the defendants violated his equal protection rights, the record is devoid of admissible evidence that the defendants acted in an intentionally discriminatory manner. The allegations presented by Carey do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *Sweet*, 467 F.3d at 1319;  *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  Moreover, the arbitrary application of administrative rules and/or state laws does not constitute a violation of the Constitution.  *E & T Realty*, 830 F.2d at 1114. Carey has therefore not been denied equal protection of the law with respect to the denial of parole.  Thus, the defendants are entitled to summary judgment on the equal protection claim.

* * *

### D.  False Information

Carey complains the defendants deprived him of due process when they relied on false information to deny him parole.  *Plaintiff's Complaint - Court Doc. No. 1* at 3 (emphasis in original) (parole board members based their decision to deny parole "upon ***erroneous - false information*** {'that I have violent behavioral problems'}...."). The defendants do not admit the information utilized in the parole decision-making process is false and categorically deny any knowing reliance on false information.  *Parole Defendants' Exhibits B and C to the June 17, 2008 Second Supplemental Special Report -- Court Doc. No. 40-1* at 2-5.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

Our holding today does not conflict with our earlier holding in

9

*Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.  *Id.* at 942.  We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.  *Id.*  In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.  As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.  *Slocum* controls the disposition of the instant false information claim.

The defendants maintain the information on which they relied to deny Carey parole  is correct and reliance on this information therefore did not violate the plaintiff's constitutional rights.   Specifically, there is no admission by the defendants that the information utilized in denying Carey parole is false, incorrect or erroneous.  Carey has failed to come forward with any evidence which indicates the defendants knowingly used false information during the parole consideration process.  Moreover, Carey's conclusory assertion regarding false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief.  *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

10

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in their decision to deny Carey parole. Consequently, the plaintiff is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate.

**E.  Ex Post Facto Application of Consideration Guidelines**

Carey contends the parole board's revised rule requiring that an initial parole consideration date be set upon completion of 85% of a prisoner's total sentence or fifteen (15) years, whichever comes first, is violative of his constitutional rights. Carey also maintains the defendants violated his constitutional rights when they retroactively applied applicable administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his 2007 parole consideration date.

**1.  The Initial Consideration Date**.  Carey asserts that, at the time the trial court imposed sentence upon him, the rules of the Alabama Board of Pardons and Paroles  entitled him to parole consideration after serving ten years (10) or one-third of his sentence, whichever is lesser.   The administrative regulation at issue, which the parole board revised in 2001 and amended in 2004, extends the date of an initial parole consideration for individuals such as Carey who have been convicted of a Class A felony to completion of 85% of the prisoner's sentence or fifteen years (15) years imprisonment, whichever is lesser. *Respondents' Exhibit C to the August 4, 2008 Response to Discovery Request - Court Doc. No. 52-3* at 4-5 -- *Alabama Board of Pardons and Paroles Rules, Regulations and Procedures*, Article I, § 7. Carey advises his "first parole hearing was January 1, 1999." *Plaintiff's Response in Opposition - Court Doc. No. 63* at 10.  This initial parole consideration hearing was held within the time required by the rules and regulations in effect at the time of Carey's murder conviction.  Thus, the revised rule did not affect the scheduling of Carey's initial parole consideration.  In light of the foregoing, Carey lacks standing to challenge any amendment to the parole board's administrative regulations concerning the scheduling of his initial parole consideration date and summary judgment is due to be granted in favor of the defendants with respect to this claim.

**2.  The Frequency of Reconsideration**.  Carey complains that set-off of his parole consideration date for a potential of five years upon retroactive application of amended administrative regulations is unconstitutional because prior regulations allowed parole consideration at more frequent intervals.  This allegation implicates the protections guaranteed by the Ex

11

Post Facto Clause and the court therefore construes the claim as one arising under this provision of the Constitution.

The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Garner,* 529 U.S. at 255. Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* §

12

15-22-26, *Ala.Code 1975*, "and when and under what conditions" parole will be granted, § 15-22-24(a), *Ala. Code*.  Applicable state law also requires that the parole board consider the public interest in every case.  *Ala. Code* § 15-22-26.   This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause.  *Garner*, 529 U.S. at 250.  The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* (internal quotation marks and citation omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles.  In 2001, the parole board adopted the rules and regulations applicable to the claims presented in this case.  The board amended these rules and regulations in 2004.  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five (5) years."  *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No. 52-3* at 11.  [The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial." *Parole Defendants' Exhibit A to the August 4, 2008 Response - Court Doc. No. 52-1* at 7.  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11.  *Parole Defendants' Exhibit B to the August 4, 2008 Response - Court Doc. No. 52-2* at 8.  The parole board retained the five-year set off in its 2004 amendments. *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No. 52-3* at 11.] Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] ...., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."  *Id.* at 6. [The 2001 amendment to the regulation in Article 2, § 8 allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole.  *Parole Defendants' Exhibit B to the*

*August 4, 2008 Response - Court Doc. No. 52-2* at 5.]  The opportunity for an expedited parole review is likewise available to qualified inmates.  Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison."  *Id*.  Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.  *Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Carey nor increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Carey that he would be unconditionally released before completion of his thirty-year sentence.  Additionally, eighteen months after a denial of parole Carey has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date.  Hence, even if risk of an increased term of incarceration develops in Carey's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires.  Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*; *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No. 52-3* at 6.

Carey has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Carey.  Moreover, Carey possesses the ability to petition the parole board for an earlier parole consideration date.  Based on the foregoing, the court concludes that the change about which Carey complains did not lengthen his actual term of imprisonment.  Thus, Carey's challenge to the potential increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.  *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 Fed.Appx. 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural....  The Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent

review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070, 115 S.Ct. 1706 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by parole board not violative of the Ex Post Facto Clause).  The defendants are therefore entitled to summary judgment on this claim.

### F. Conspiracy

Carey alleges defendants Riley, King and Shehane engaged in a conspiracy with defendants Wynn, Weatherly and Longshore which resulted in the denial of parole.  "Conspiring to violate another person's constitutional rights violates section 1983.  *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991)....  [T]he linchpin for conspiracy is agreement...."  *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)."  *Rowe,* 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey*, 949 F.2d at 1133.

The parole defendants deny they conspired with any other party to violate Carey's constitutional rights and, instead, argue they acted appropriately at all stages of the parole consideration process.  Defendants Riley, King and Shehane likewise deny acting in concert with members of the parole board or each other to deny Carey his constitutional rights.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Carey's supposititious theory that the defendants engaged in various conspiratorial acts against him.  Specifically,

Carey has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Carey's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants. *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557. Thus, Carey has failed to produce any probative evidence of a conspiracy and the motions for summary judgment filed by the defendants are due to be granted regarding this claim. *Bailey*, 956 F.2d at 1122.

*Recommendation - Doc. No. 104* at 7-28 (footnotes omitted), adopted as opinion of the

court February 24, 2011 (Doc. No. 108), affirmed on appeal (Doc. No. 116).

Carey appealed the findings of this court. On appeal, the Eleventh Circuit held, in

pertinent part, as follows:

### i. Due Process - the 2007 Hearing and Denial of Parole

Carey contended that defendants Wynn, Weatherly, and Longshore deprived him of "fair consideration" for parole in violation of his due process rights because the decision to deny parole [arose] from their arbitrary and capricious actions. Specifically, Carey complained that these defendants denied him due process when they: (1) failed to act in accordance with laws and regulations applicable to determining an inmate's suitability for release on parole, setting off parole consideration dates, and scheduling of parole hearings, (2) set-off his parole consideration date based on a regulation enacted after entry of his [murder] conviction, (3) considered adverse information provided by the victim's family without verifying the information, (4) did not allow him to attend the [parole] hearing, (5) denied his family the opportunity to explain the facts surrounding the murder, and (6) utilized statutes and regulations enacted after his date of conviction in the parole consideration process.

Establishment of a parole system does not automatically create a liberty interest in parole; "[o]nly when a state maintains a parole system that creates a legitimate expectation of parole does it [also] establish a liberty interest in parole that is subject to the protections of the Due Process Clause." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). In *Thomas v.*

*Sellers*, we held that the Alabama parole statutes do not create a liberty interest that is protected by due process. 691 F.2d 487, 489 (11th Cir. 1982). We also have rejected the argument that the regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration. *Slocum v. Ga. State Bd. of Pardons and Paroles*, 678 F.2d 940, 941-42 (11th Cir. 1982). We reasoned that, "[u]nless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness." *Id*. at 942. Furthermore, although a state may create liberty interests that are protected by the Due Process Clause, these interests generally will be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Nevertheless, even if there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489.

Here, Carey concedes that he has no protected liberty interest in parole, but contends that the parole board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole. This argument is foreclosed by the holding of *Slocum*, described above. *See Slocum*, 678 F.2d at 941-42. Moreover, the parole board members' assertion that they were not persuaded that Carey presented an acceptable risk for release on parole after conducting the 2007 parole hearing is supported by the record, and Carey has failed to show that the parole board members' actions were unreasonable, inappropriate, arbitrary, or capricious. Thus, Carey's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitled him to no relief.

### ii. Equal Protection

Carey is an African-American inmate who was convicted of murder. He asserted that the defendants violated his right to equal protection by denying him parole when other inmates convicted of murder or more serious crimes have been granted parole, and argued that white inmates are more likely to make parole than black inmates.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who receive more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19

(11th Cir. 2006). When a plaintiff challenges the actions of parole officials, he is required to present "exceptionally clear proof of discrimination" because the "decision to grant or deny parole is based on many factors such as criminal history, nature of the offense, disciplinary record, employment and educational history, etc." *Fuller v. Ga. State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Here, the defendants denied that they undertook any action in Carey's parole consideration process based on race or any other constitutionally impermissible reason. Instead, they maintained that the denial of Carey's parole was solely based on their determination that he was not suitable for release on parole. Despite Carey's conclusory allegations, he did not present any evidence whatsoever that similarly situated prisoners of a different race were granted parole. *See id.* Accordingly, the district court did not err in granting summary judgment on Carey's equal protection claims.

\* \* \*

### iv. False Information in Violation of Due Process

Carey argued that the defendants deprived him of due process when they relied on false information, specifically that he has violent behavioral problems, to deny him parole. The defendants denied that they knowingly relied on any false information.

Knowing reliance on ***admittedly*** false information to deny a prisoner consideration for parole constitutes arbitrary and capricious treatment in violation of the constitution. *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991). However, a prisoner does not state a due process claim by merely asserting that erroneous information may have been used during his parole consideration. *Id.* (affirming *Slocum*, 678 F.2d at 941).

Here, the defendant parole board members did not admit that information contained in Carey's file is false, nor did they admit to relying on any false information. *See Monroe*, 932 F.2d at 1442. Carey's conclusory assertion that the decision to deny him parole was based on false information is insufficient to state a due process claim, and furthermore, he did not produce any evidence indicating that the defendants knowingly used false information during the parole determination process. *See Slocum*, 678 F.2d at 941. Accordingly, the district court did not err in granting summary

judgment on the instant due process claim.

**v. Ex Post Facto Application of Parole Consideration Guidelines**
**a. The Initial Consideration Date**

Carey argued that, at the time the trial court imposed the sentence, the rules of the [Alabama Board of Pardons and Paroles] entitled him to parole consideration after serving the lesser of either ten years or one-third of his sentence. The administrative regulation, which was revised in 2001 and amended in 2004, extended the date of an initial parole consideration for individuals who have been convicted of a Class A felony, including murder, to the completion of the lesser of 85 percent of the prisoner's sentence or 15 years' imprisonment.

Carey contended that his first parole hearing was held on January 1, 1999. This hearing was within the ten-year time period required by the rules and regulations in effect at the time of his murder conviction. Thus, the subsequently revised rules did not affect the scheduling of his initial parole consideration. Accordingly, the district court did not err in granting summary judgment to the defendants on this claim.

**b. The Frequency of Parole Consideration**

Carey maintained that the defendants violated his constitutional rights when they scheduled his 2007 parole consideration date based on the retroactive application of the administrative rules that altered the frequency of parole consideration dates from every three years to every five years.

The Ex Post Facto Clause prohibits the enactment of laws "which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000). In deciding whether a change in a parole regulation violates this precept, the court must consider evidence of the general operation of the parole system, including the discretion vested in the parole board, the statutory structure, the parole board's representations regarding its operations, and any other evidence produced by a prisoner in support of his assertion that the regulation, "'as applied to his sentence,' created a significant risk of increasing his punishment." *See Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000) (quoting *Garner*, 529 U.S. at 255, 120 S.Ct. 1370). "The idea of discretion is that [the parole board] has the capacity, and the obligation, to change and adapt based on experience." *Garner*, 529 U.S. at 253, 120 S.Ct. at 1369.

Here, the initial operating procedure governing the scheduling of parole consideration dates provided that upon denial of parole, "the Board

will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial." Ala. Adm. Code § 640-X-2-.02(8) (1982, revised 1986). Article 6, § 11 of the Rules, Regulations and Procedures of the Board of Pardons and Paroles ("Regulations") increased the reset date from a maximum of three years from denial of parole to the current five-year maximum, and the parole board retained the five-year set-off in its 2004 amendments.

Despite these amendments, Alabama law gives the [Alabama Board of Pardons and Paroles] broad discretion to determine whether an inmate should be granted parole, and "when and under what conditions" parole should be granted. Ala. Code §§ 15-22-24(a), 15-22-26. The parole board is required to consider the public interest in every case. *Id*. § 15-22-26. Article 2, § 7 of the Regulations provides that, if the [Alabama Board of Pardons and Paroles] "scheduled the next consideration three years or more after the denial [of parole] . . ., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole." Moreover, Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison." *Id*. Thus, the rule changes were designed to facilitate better exercise of the [Board's] discretion. *See Garner*, 529 U.S. at 254-55, 120 S.Ct. at 1369-70.

In Carey's case, the [Alabama Board of Pardons and Paroles] never guaranteed that he would be unconditionally released prior to the completion of his 30-year sentence. Furthermore, under the current regulations, 18 months after the denial of parole, Carey has the opportunity to submit information about changed circumstances bearing on his suitability for parole, and could be scheduled for consideration at an earlier date. *See* Art. 2, § 7, Regulations. Thus, even if a risk of an increased incarceration term developed in Carey's case, upon a showing of good cause, he could seek review of the denial of parole prior to the expiration of the five-year interval. *See* Art. 2, § 1, Regulations.

Accordingly, because Carey failed to show that the potential increase in time between his parole consideration dates lengthened his actual term of imprisonment, this change in the regulations did not rise to the level of a constitutional violation, and the district court did not err in granting summary judgment on the ex post facto claim. *See Garner*, 529 U.S. at 255, 120 S.Ct. at 1370.

20

### vi.  Conspiracy Claims

Carey alleged that defendants Riley, King, and Shehane engaged in a conspiracy with defendants Wynn, Weatherly, and Longshore, that resulted in the denial of parole.

"Conspiring to violate another person's constitutional rights violates section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002).  To establish a prima facie case of [a] section 1983 conspiracy, a plaintiff must show, *inter alia*, that the defendants "reached an understanding to violate [his] rights." *Id*. (quotation omitted).  "The plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants." *Id*. at 1283-84 (quotations omitted).

Here, Carey's conclusory allegations that the defendants conspired to deny him parole are insufficient to establish a § 1983 conspiracy.  *See id*. at 1283.  Carey's submissions fail to show any evidence ... that the defendants reached an understanding to violate his rights, and thus, the district court did not err in granting summary judgment on this claim.  *See id*. at 1283-84.

\* \* \*

In sum, we conclude that the district court properly dismissed Carey's § 1983 complaint.  We now find that the appeal is frivolous, DENY leave to proceed, and DISMISS the appeal.

*Carey v. Wynn, et al.*, *supra - Doc. No. 116* at 8-16.  The appellate court also subsequently denied a motion for reconsideration filed by Carey.  *Id. - Doc. No. 118*.

### B.  Res Judicata

The respondents maintain that based on the judgment entered in *Carey v. Wynn, et al.*, *supra*, res judicata precludes Carey from obtaining relief on the federal habeas claims which remain pending before this court, i.e., the conspiracy, equal protection, ex post facto and due process challenges to the March 28, 2007 denial of parole.

The preclusive effect of a judgment is defined by claim preclusion and issue

preclusion, which are collectively referred to as "res judicata."  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  *Id*., at 748-749, 121 S.Ct. 1808.  By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Montana v. United States*, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

*Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 2171 (2008)

"Our res judicata analysis has always required a consideration of the facts and legal theories of two causes of action as well as the rights and duties involved in each case."

*Draper v. Atlanta Indep. Sch. Sys.,* 377 Fed. Appx. 937, 940  (11th Cir. 2010) *certiorari denied*, 131 S.Ct. 342, 178 L.Ed. 2d 223, 79 USLW 3205 (Oct. 4, 2010) (citing  *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992)).  "We have consistently concluded that when the substance and facts of each action are the same, res judicata bars the second suit."  *Id*.  In *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541 (11th Cir. 1986), the Eleventh Circuit summarized the doctrine of res judicata observing that:

Res judicata ... refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit....  In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits;  (2)  the  decision  must  be  rendered  by  a  court  of  competent

> jurisdiction; (3) the parties, or those in privity with them, must be identical
> in both suits; and (4) the same cause of action must be involved in both
> cases.

*I.A. Durbin*, 793 F.2d at 1549 (citations omitted).  It is clear to this court that each requisite element is met in this case.

    1.  <u>Final Judgment and Court of Competent Jurisdiction</u>.  There is no dispute that this court acted as a court of competent jurisdiction in *Carey v. Wynn, et al.*, *supra*.  In addition, this court's determination of the issues and claims raised in the prior civil rights action constituted a judgment on the merits.  *Mars Hill Baptist Church of Anniston, Ala., Inc. v. Mars Hill Missionary Baptist Church*, 761 So.2d 975 (Ala. 2000) (emphasis in original) ("A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of the parties disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.  Key factors in determining whether a judgment may be considered as on the merits are that there have been notice and an opportunity to be heard....  It is not necessary, however, that there should have been a trial.  If the judgment is general, and not based on any technical defect or objection, and the parties had a full legal opportunity to be heard on their respective claims and contentions, it is on the merits, ***although there was no actual hearing on the facts of the case***."); *Bd. of Tr. of the Univ. of Ala. v. Am. Res. Ins. Co., Inc.*,

23

5 So.3d 521, 533 (Ala. 2008) (same).

2. <u>Identical Parties</u>.  Parties are "identical" for purposes of res judicata when they are the same or in privity with one another.  *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990).  In *Thompson v. SouthTrust Bank*, 961 So.2d 876, 883 (Ala. Civ. App. 2007), the court, while noting that in Alabama the term "privity" had not been uniformly defined with respect to res judicata, observed that it was often deemed to arise from

> "(1) the relationship of one who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation."  Thus, the existence of privity has generally been resolved "on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment."  *Hughes v. Martin*, 533 So.2d 188, 191 (Ala.1988).

Carey, the party seeking relief, is identical in both civil actions.  In the style of the habeas action, Carey lists the Alabama Board of Pardons and Paroles and Miriam Shehane as respondents.  In the body of the petition, he presents claims against Robert Longshore and Velinda Weatherly, members of the parole board, former Governor Bob Riley, former Attorney General Troy King and victim's advocate Miriam Shehane.  Thus, the aforementioned individuals appear in both the previous state court case and this case.  In accordance with habeas corpus procedural requirements, Carey adds Robert Danford, his custodian at the time of filing the habeas petition, as a respondent.  The habeas petition also omits mention of parole board member Bill Wynn and, instead, references parole

board member Sydney Williams as an adverse party.

It is clear that Sydney Williams is in privy by law with the parole board members named in the prior civil action and that Robert Danford is in privy with the state defendants against whom Carey previously sought relief.   Williams and Danford likewise had an identity of interest in the prior litigation.   Consequently, Williams and Danford are in privity with the individuals named as defendants in the prior 42 U.S.C. § 1983 action such that they may take advantage of this court's previous adjudication of Carey's claims for relief.

3.   <u>The Same Cause of Action</u>.   In *Manning*, the Eleventh Circuit summarized the law regarding when a cause of action is the same for purposes of res judicata as follows:

> In this circuit, the determination of whether the causes of action in two proceedings are the same is governed by whether the primary right and duty are the same. *Hunt,* 891 F.2d at 1561 (quoting *Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir. 1979)); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986).  The test is one of substance, not form. *I.A. Durbin,* 793 F.2d at 1549. Res judicata applies "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Hunt,* 891 F.2d at 1561 (despite variations in legal theories used and remedies sought, second suit barred because wrongful act in both cases was flying Confederate flag atop state capitol) (quoting *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir. 1984)); *Jaffree v. Wallace,* 837 F.2d 1461, 1468 (11th Cir. 1988) (second suit barred because "[b]oth cases raised first amendment (free exercise and establishment clause) challenges to use of textbooks and teachings on various subjects"); *Nilsen v. City of Moss Point,* 701 F.2d 556, 560 (5th Cir. 1983) (section 1983 action against city that refused to hire plaintiff as firefighter due to her sex precluded by earlier Title VII action on same facts).

953 F.2d 1355, 1358-59 (11th Cir. 1992).

The conspiracy, equal protection, ex post facto and due process claims raised herein are identical to the claims raised in Carey's 42 U.S.C. § 1983 action.  In addition, the issues necessary to the disposition of each case are indistinguishable.  "*Res judicata* bars the filing of claims which were raised [and addressed] in an earlier proceeding." *Driessen v. Fla.*, 401 Fed. Appx. 435 (11th Cir. 2010) quoting *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999).  Based on the decision of this court in *Carey v. Wynn*, *supra*, finding no violation of Carey's constitutional rights during the parole consideration process which resulted in the March 28, 2007 denial of parole, the court concludes that the pending claims for federal habeas relief entitle Carey to no relief as these claims are precluded from review by the doctrine of res judicata.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The  28 U.S.C. § 2254 petition for habeas corpus relief filed by Anthony L. Carey be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before July 5, 2013 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the

26

Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th  day of June, 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE